**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

NICHOLAS MOORE-GRIGALIUNAS,
as Administrator of the estate of
VIVIAN BUNTEN,

          Appellant,

     v.

AFYA CARE HOMES, LLC, a
Washington Limited Liability Company,
and CHARLES KARWIGI and "JANE
DOE" KARWIGI, a married couple and
their community comprised thereof,
and HELLEN NGUGI, and "JOHN
DOE" NGUGI, a married couple and
their community comprised thereof,

          Respondents.

No. 88764-5-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Nicholas Moore-Grigaliunas, as the administrator of the Estate of Vivian Bunten, sued Afya Care Homes, LLC (Afya)[1] for negligence, violation of the vulnerable adult statute, RCW 74.34.200, and wrongful death, arising from care provided to Bunten in August 2022. Moore-Grigaliunas appeals the trial court's order dismissing the complaint on summary judgment. We affirm.

---

[1] Moore-Grigaliunas also named Charles and "Jane Doe" Karwigi, and Hellen and "John Doe" Ngugi as defendants. We refer to the defendants collectively as "Afya."

I.     FACTS

In 2022, Bunten, an 81-year-old woman, was discharged from Skagit Valley Hospital and transitioned to living at Afya, an adult family home.  Prior to her discharge to Afya, an adult family home assessment care plan was completed, which noted that Bunten had a fall risk and that she needed supervision and the assistance of a cane or a walker.  The assessment also noted that she had possible Lewy body dementia.

On August 17, 2022, at around 12:55 a.m., just over two days after she entered Afya, care staff heard a bang from Bunten's room and rushed to her bedroom where they found Bunten lying on the floor.  Bunten was transferred to the emergency room where she was diagnosed with a traumatic subdural hemorrhage without loss of consciousness.

On August 19, 2022, Bunten returned to Afya, but she was often very weak and could barely walk on her own.  On August 24, 2022, she woke up agitated and weak and could barely walk even with a walker.  By dinner time, Bunten was leaning to the right and could not stand upright.  Care staff called 911 and took Bunten to the emergency room.

It was discovered that Bunten was suffering from the worsening of a subdural hematoma.  On September 7, 2022, Bunten passed away and her cause of death was listed as an acute subdural hematoma that occurred after a several-week interval as a result of the fall that occurred on August 17, 2022.

Moore-Grigaliunas, as the administrator of Bunten's estate, sued Afya asserting claims for negligence, a violation of the vulnerable adult statute, and wrongful death.  Afya moved for summary judgment arguing that Moore-Grigaliunas failed to prove that

Afya's conduct constituted neglect, abuse, or abandonment under ch. 74.34 RCW and failed to prove that Afya proximately caused Bunten's death.

In response to Afya's motion for summary judgment, Moore-Grigaliunas provided a declaration from Dr. Richard Stride, a licensed mental health counselor in the state of Washington and a licensed professional counselor in Colorado and Texas. Dr. Stride opined that Afya's care of Bunten fell below the standard of care based on provisions in the Washington Administrative Code (WAC).

The trial court awarded summary judgment to Afya. The trial court also ruled that Dr. Stride's opinions were inadmissible under ER 702.

Moore-Grigaliunas appeals.

## II. DISCUSSION

### A. Standard of Review

We review de novo all trial court rulings on summary judgment, including rulings on the admissibility of evidence. Asphy v. State, 31 Wn. App. 2d 605, 622-23, 552 P.3d 325, review denied, 3 Wn.3d 1033, 559 P.3d 1023 (2024) (citing Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)). We view all facts and reasonable inferences in the light most favorable to the nonmoving party—in this case, Moore-Grigaliunas. Young v. Key Pharms., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989). Summary judgment is proper if the record before the trial court establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

Summary judgment is subject to a burden-shifting scheme. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). The party moving for

summary judgment bears the initial burden of showing that there is no disputed issue of material fact. Young, 112 Wn.2d at 225. If the moving party meets this initial showing, then the burden shifts to the nonmoving party to present evidence that an issue of material fact remains. Young, 112 Wn.2d at 225. The nonmoving party must then present "'specific facts which sufficiently rebut the moving party's contentions'" and create a genuine issue of material fact. Ranger, 164 Wn.2d at 552 (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)).

B. Admissibility of Dr. Stride's Declaration

Moore-Grigaliunas first argues the trial court erred when it excluded the declaration of Dr. Stride. We disagree.

ER 702 permits testimony by a qualified expert where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is helpful if it concerns matters beyond the average layperson's common knowledge and is not misleading. State v. Groth, 163 Wn. App. 548, 564, 261 P.3d 183 (2011). Expert opinions that are conclusory or speculative will not be admitted. Asphy, 31 Wn. App. 2d at 622-23. We generally will not disturb a trial court's ruling on the admissibility of expert testimony at summary judgment, "'[i]f the reasons for admitting or excluding the opinion evidence are both fairly debatable.'" Asphy, 31 Wn. App. 2d at 622 (alteration in original) (internal quotation marks omitted) (quoting Moore v. Hagge, 158 Wn. App. 137, 155, 241 P.3d 787 (2010)).

In response to Afya's motion for summary judgment, Moore-Grigaliunas provided a declaration from Dr. Stride. Dr. Stride is a licensed mental health counselor and the

-4-

president and CEO of Cascade Community Healthcare—a community mental health center. Dr. Stride asserted that he had been an expert witness in over 100 legal cases involving "community mental health standards of practice, regulatory compliance, wrongful death, diminished capacity, child custody evaluations, professional practice standards, and ethical issues in mental health." He opined that Afya violated Washington law and regulations by failing to conduct a thorough assessment of Bunten's fall risk. He outlined various WAC provisions and asserted that Afya deviated from the standards and requirements in the WACs. He ultimately concluded:

> The totality of the evidence leads me to conclude that AFYA Care Homes failed to meet the standard of care required for an adult family home licensed to provide dementia specialty services. Systemic noncompliance undermines confidence in the facility's ability to deliver competent, safe care and materially increases the risk of preventable harm, including the severe injury, decline, and death suffered by Vivian Bunten.

Dr. Stride's experience did not include any details about working in or for adult homes. While a licensed mental health counselor and CEO of a community health center, there was no evidence Dr. Stride had experience performing or analyzing fall risk assessments, implementing care plans for vulnerable adults at risk for falls, or managing or performing duties at an adult family home. Further, experts "must state specific facts showing what the applicable standard of care was and how the defendant violated it." Reyes v. Yakima Health Dist., 191 Wn.2d 79, 89, 419 P.3d 819 (2018). And "the expert must link [their] conclusions to a factual basis." Reyes, 191 Wn.2d at 89. Dr. Stride's opinions were derived from his interpretation of the WACs applicable to adult family homes. But he did not allege specific facts that show Afya's conduct fell below the applicable standard of care. His conclusory statements in his declaration

were unsupported.  The trial court did not err in concluding that Dr. Stride's declaration was excluded under ER 702.

### C.  Burden of Proof

Moore-Grigaliunas next argues that Afya failed to meet its preliminary burden of showing the absence of a material dispute of fact.  Afya argues that Moore-Grigaliunas failed to establish that Afya committed neglect, abuse, or abandonment under ch. 74.34 RCW.  We agree with Afya.

RCW 74.34.200(1) creates a cause of action for abuse or neglect of a vulnerable adult by an adult care facility.  Under the chapter, "abuse" is defined as "the intentional, willful, or reckless action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult."  RCW 74.34.020(2).  Abandonment is defined as the "action or inaction by a person or entity with a duty of care for a vulnerable adult that leaves the vulnerable person without the means or ability to obtain necessary food, clothing, shelter, or health care" RCW 74.34.020(1).  Lastly, neglect is defined as:

> (a) a pattern of conduct or inaction by a person or entity with a duty of care that fails to provide the goods and services that maintain physical or mental health of a vulnerable adult, or that fails to avoid or prevent physical or mental harm or pain to a vulnerable adult; or (b) an act or omission by a person or entity with a duty of care that demonstrates a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health, welfare, or safety, including but not limited to conduct prohibited under RCW 9A.42.100.

RCW 74.34.020(15).

At summary judgment, Afya argued that Moore-Grigaliunas failed to prove that Afya's conduct constituted neglect, abuse, or abandonment and that he failed to prove

that its conduct proximately caused Bunten's death. In response, Moore-Grigaliunas argued that Afya employee Charles Karwigi knew that Bunten had a history of falls but did not have anyone in the room or passive protections if Bunten woke up in the middle of the night unsupervised. Moore-Grigaliunas acknowledged that Karwigi placed a two-inch-thick padded mat on the floor next to Bunten's bed out of concern that she might fall out of the bed, but he argued that the pad created a hazard for Bunten. Moore-Grigaliunas argued that this conduct constituted willful or reckless action or inaction that inflicted injury, meeting the standard of abuse. Moore-Grigaliunas also asserted that this conduct raised to the level of neglect.

Viewing the facts in the light most favorable to Moore-Grigaliunas, there is no genuine issue of material fact to preclude summary judgment. Moore-Grigaliunas offered no evidence that Afya willfully acted to inflict injury or that their conduct left Bunten without means or the ability to maintain basic access to medical care. Moore-Grigaliunas's speculation that the placing of the mat near Bunten's bed was an intentional infliction of harm or a neglectful act is insufficient to overcome summary judgment. Moore-Grigaliunas was required to provide "more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues" to survive summary judgment. Walker v. King County Metro, 126 Wn. App. 904, 912, 109 P.3d 836 (2005). He failed to introduce specific acts of negligence or a causal connection between Bunten's death and Afya's care. He speculated that Afya failed to meet the standard of care and acted negligently by placing the mat there. But he did not provide specific evidence or facts. His own

opinions and conclusory statements about the conduct of Afya are insufficient to overcome summary judgment.

For those reasons, the trial court did not err when it granted summary judgment and dismissed Moore-Grigaliunas's complaint.

We affirm.

_____
Mann, J.

WE CONCUR:

_____
Birk, J.

_____
Coburn, J.